[Cite as *State v. Rice*, 2015-Ohio-5481.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150191 |
| | | TRIAL NO. B-1404689 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| JAMES RICE, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 30, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.,* for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant James Rice appeals his convictions, following a jury trial, for aggravated burglary, aggravated robbery, and the accompanying three-year firearm specifications. The trial court sentenced Rice to an aggregate sentence of 25 years in prison. In this appeal, Rice challenges the trial court's denial of his motion to dismiss his indictment based on alleged violations of his constitutional and statutory rights to a speedy trial. We affirm the trial court's judgment.

### Factual and Procedural Posture

{¶2} In August 2012, Rice, who was on parole to the Commonwealth of Pennsylvania, met with his parole officer, James Hubbell, with the Adult Parole Authority ("APA") in Butler County. During the course of the meeting, Rice indicated that he needed to obtain a travel permit from his car. Hubbell and another parole officer accompanied Rice to his car. Rice then consented to a search of his vehicle by Hubbell and his partner, who found a bag on the rear seat of the vehicle which contained firearms, a holster, gloves, ski masks, zip ties, and a counterfeit police badge. Rice was arrested and placed in the Butler County jail. Hubbell then referred the matter to the city of Hamilton Police Department in Butler County, Ohio.

{¶3} Shortly thereafter, Michael Waldeck, with the city of Hamilton Police Department, took the information regarding Rice and placed it on the Southwestern Ohio Police ("SWOP") Intelligence Website. He also sent out an email to other police agencies, which contained Rice's photograph and detailed the items recovered from Rice's vehicle, in the event that Rice may have fit the description of a potential suspect in any unresolved criminal case.

{¶4}     On August 31, 2012, Specialist Les Mendes with the Cincinnati Police Department contacted Hubbell.  Mendes told Hubbell that Rice may have been involved in a home invasion in Hamilton County on August 16, 2012.  Mendes was looking at charging Rice with aggravated burglary and impersonating a police officer. Hubbell could not recall telling Mendes that Rice was in custody, and he testified that his notes from their phone conversation did not reflect that any conversation to that effect had taken place.  Hubbell testified that he had a second phone call with Mendes on September 10, 2012, when Mendes had relayed that two witnesses had picked Rice out of a photo lineup.

{¶5}    Hubbell's supervisor, Teresa Williams, testified that Rice was arrested on August 20, 2012, prosecuted by Butler County, and sentenced to the Ohio Department of Rehabilitation and Correction ("ODRC") for 24 months. Williams testified that she took the initial phone call from Mendes on August 31, 2012. Mendes was looking at Rice and possibly other people for a home invasion.  Williams testified that she had "specifically told Detective Mendes that [Rice] was in custody for the new [Butler County] charges, and also the APA had a hold on him that, even if he had posted bond, he wouldn't be leaving jail because he was on supervision to [the APA] for the Commonwealth of Pennsylvania," which had not yet issued a warrant for Rice's arrest.

{¶6}    On September 19, 2012, Williams had another conversation with Mendes to relay some additional information that Hubbell had discovered. Mendes had stated in his initial call with the Butler County APA that Rice had committed the home invasion sometime between 11:30 p.m. and midnight on August 16th, but that Rice had purportedly been in Cambria County, Pennsylvania the morning of August 17th.  So, Williams had shared with Mendes that there might be a time issue.

3

Hubbell contacted the clerk of courts in Cambria County and determined that Rice had been seen at a window making a payment at 9:06 a.m. and again at 9:28 a.m. on the morning of August 17, 2012. Per their investigation with Google maps, Williams and Hubbell determined that Rice could have made it from Cincinnati, Ohio, to Cambria County in six hours and 20 minutes. Williams gave this information to Mendes on September 19, 2012. Williams could not recall if she had mentioned during the September 19, 2012 phone call whether Rice was in custody, but she testified that there had been no change in Rice's status at that point.

{¶7} Anthony Spinney, a civilian deputy with the Hamilton County Sheriff's Office, testified that before entering the complaint and warrant that had been sworn out by Mendes into the computer system, he ran a Law Enforcement Automated Data Systems ("LEADS") check and a National Criminal Information Center ("NCIC") background check. On January 30, 2013, a complaint, affidavit, and arrest warrant were entered into the clerk of court's system. Spinney testified that he had no information regarding the service of the warrant, and that he was unable to determine if someone was currently incarcerated.

{¶8} Regina Cox testified that she is employed by ODRC. She testified that Rice had been sentenced to two years in prison for having a weapon under a disability and for possession of drugs. She testified that a LEADS check had been run when Rice was admitted to ODRC on October 31, 2012, and 30 days before he was released from ODRC on August 19, 2014.

{¶9} Cox testified that ODRC notified the Hamilton County Sheriff's Office by letter on July 30, 2014, that Rice was in custody at the London Correctional Institute ("LoCI"), that he had outstanding charges against him, and that he was

4

being released on August 19, 2014. The letter referenced a Hamilton County case number and a warrant against Rice that had been entered on January 30, 2013.

{¶10} Mendes testified that he was investigating a home-invasion burglary on August 16, 2012. He first heard of Rice when he read an email by the Hamilton Police Department to the SWOP Intel on August 21, 2012. He did a query on Rice and then contacted the issuing department. He looked over the report of the burglary offense, checked it with the height and weight of Rice, and compiled a photo lineup with Rice's photo to show the victims. On August 25, 2012, three of the four victims identified Rice as the perpetrator.

{¶11} Mendes contacted the APA in Butler County and spoke with Hubbell and Williams, who advised him that Rice was in custody. Mendes testified that he waited until January 30, 2013, to swear out the complaint and warrant, because he had lost contact with the victim. She was not returning his calls, and he wanted to confirm that she wanted to move forward with the charges. He filed the charges after he had heard back from her.

{¶12} Mendes testified that he may have contacted the Butler County jail, but he did not believe he had ever contacted the Butler County clerk's office to determine what had happened with Rice's arrest in Butler County. He did not believe he had ever contacted the ODRC to determine if Rice was incarcerated, but he did have knowledge, based on his conversations with Hubbell and Williams, that Rice was "doing some time for the prior offense, the probation violation." He did not recall a specific date when he learned this, but testified that it was probably prior to signing the warrant. Mendes further testified that he never contacted the ODRC to let them know an incarcerated person has a warrant. Instead, ODRC contacts him to let him know when it is time to pick up the inmate.

{¶13} On August 19, 2014, Mendes traveled to LoCI where he arrested Rice. A grand jury indicted Rice on August 28, 2014, for one count of aggravated burglary and one count of aggravated robbery with firearm specifications arising out of the August 16, 2012 incident. On December 1, 2014, Rice filed a motion to dismiss the indictment against him on speedy-trial grounds. At the conclusion of the evidentiary hearing, the trial court denied Rice's motion, and his case proceeded to trial before the jury, which found him guilty of the charges and specifications.

### Speedy-Trial Rights

{¶14} In a single assignment of error, Rice argues the trial court erred by denying his motion to dismiss the charges against him based on the alleged violation of his constitutional and statutory speedy-trial rights.

{¶15} Reviewing a trial court's ruling on a motion to dismiss based upon a violation of the speedy-trial guarantees involves a mixed question of fact and law. We give due weight to the inferences drawn from the facts found by the trial court as long as they are supported by competent, credible evidence. With respect to the trial court's conclusions of law, we employ a de novo standard of review, to determine whether the facts satisfy the applicable legal standard. *State v. Terrell*, 1st Dist. Hamilton No. C-020194, 2003-Ohio-3044, ¶ 17.

{¶16} Rice first argues the state violated his speedy-trial rights under the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution by failing to timely indict him for the aggravated-burglary and aggravated-robbery offenses.

{¶17} The Sixth Amendment to the United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." The United States Supreme Court has held this right to be applicable to

6

state criminal trials under the Fourteenth Amendment. *See Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Section 10, Article I of the Ohio Constitution provides similar protection.

{¶18} In *State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971), paragraph three of the syllabus, the Ohio Supreme Court held that "[t]he constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment." However, shortly after *Meeker*, the United States Supreme Court held that a defendant's constitutional right to a speedy trial attaches only when a defendant is "indicted, arrested, or otherwise officially accused" of a crime or crimes. *See United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), citing *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *see also Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶19} As a result, the Ohio Supreme Court held in *State v. Luck*, 15 Ohio St.3d 150, 153, 472 N.E.2d 1097 (1984), that its ruling in *Meeker* was limited to those cases that were factually similar to *Meeker*. The *Luck* court held that an unjustifiable delay between the commission of an offense and a defendant's indictment, when it results in actual prejudice, is a violation of due process of law. *Id.* at paragraph three of the syllabus. The Ohio Supreme Court adopted a two-part test to determine whether such a delay constitutes a due-process violation. Under the first part of the test, the defendant must demonstrate that the delay caused actual prejudice to his defense. *Id.* at 157-158. If the defendant makes this showing, then the burden shifts to the state to produce evidence justifying the delay. *Id.* at 158.

{¶20} The state argues that Rice's case is factually distinguishable from *Meeker,* because Rice was incarcerated on separate charges, and he was not indicted

for the home invasion until August 28, 2014. Thus, the state asserts we must review any preindictment delay under *Luck's* due-process analysis. We agree with the state that Rice's case is factually dissimilar from *Meeker*. In *Meeker*, the defendant was indicted in 1963 on one count arising from the robbery of a gas station. He had spent six years in prison for the conviction, when the common pleas court granted his motion to vacate the sentence and ordered a new trial. The grand jury then indicted Meeker on four counts for offenses arising out of the same robbery. *Meeker*, 26 Ohio St.2d at 10-11, 268 N.E.2d 589. The Supreme Court held that the speedy-trial clock had begun to run when the state elected to charge Meeker with robbery in 1963. *Id.* at 18.

{¶21} Here, Rice was serving a separate sentence when he was charged in this case. Thus, he had never been indicted for or charged with any offenses arising out of the August 2012 home invasion until the January 30, 2013 complaint at issue here. Thus, because Rice was not the subject of any official prosecution related to the August 2012 home invasion prior to January 2013, *Meeker* does not apply, and he is not protected by the Ohio Constitution's speedy-trial guarantee for any delay arising between the police investigation and the issuance of the criminal complaint. *See State v. Adams*, ___Ohio St.3d ___, 2015-Ohio-3954, ___N.E.2d ____, ¶ 93 (holding that *Meeker* only applies when a defendant is subject to an official prosecution for at least one related offense).

{¶22} However, we cannot agree with the state that the due-process analysis articulated in *Luck* applies to the entire time frame before Rice was indicted in this case. *See Luck*, 15 Ohio St.3d at 157-58, 472 N.E.2d 1097. In *State v. Selvage*, 80 Ohio St.3d 465, 687 N.E.2d 433 (1997), the Ohio Supreme Court held that a criminal complaint against a defendant was an "official accusation" of a crime against that

defendant that operated to trigger his speedy-trial rights under United States Supreme Court case law. *See id.* at 466, citing *Marion,* 404 U.S. at 313, 92 S.Ct. 455, 30 L.Ed.2d 468. Given this statement in *Selvage*, we must conclude that Rice's speedy-trial rights attached on January 30, 2013, when the felony complaint, affidavit, and arrest warrant were filed against him. *See Adams*, ____Ohio St.3d __, 2015-Ohio-3954, ____N.E.3d ____, at ¶ 93, citing *Selvage* at 466, fn. 1 (holding that the speedy-trial clock began to run when the officer filed the criminal complaint); *see also State v. Williams*, 10th Dist. Franklin No. 13AP-992, 2014-Ohio-2737, ¶ 28.

{¶23} In *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court established an ad hoc balancing test that weighs the conduct of both the prosecution and the defendant to determine whether a defendant has been deprived of his constitutional speedy-trial rights. The four factors to be balanced are "the [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 533. No single factor is determinative; rather, the court should conduct a balancing test. *Id.*

{¶24} *Length of Delay.* Case law provides that periods of delay shorter than one year ordinarily are insufficient to justify inquiry under the remaining *Barker* factors. *See Doggett*, 505 U.S. at 652, fn.1, 112 S.Ct. 2686, 120 L.Ed.2d 520. Delays that exceed one year, however, generally require further investigation. *Id.* The period between the filing of the complaint, affidavit, and warrant on January 30, 2013, and Rice's indictment on August 28, 2014, was 18 months. This delay is sufficient to justify inquiry into the remaining *Barker* factors.

{¶25} *Responsibility for the delay.* The next *Barker* factor relates to the reason for the delay. *See Barker* at 531. The inquiry into causation involves a sliding scale. Deliberately dilatory tactics must be weighed much more heavily against the

state than periods of delay resulting from mere negligence. *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* To the extent that valid reasons cause the delay, such as missing witnesses, the delay does not count against the state at all. *Id.* Delay that is caused by the defendant does not count against the state. *State v. Triplett*, 78 Ohio St.3d 566, 570, 679 N.E.2d 290 (1997).

{¶26} Here, the record reflects that the complaint was filed and a warrant was issued to Rice at his home address. Officer Mendes testified that he did nothing to locate Rice after the warrant had been issued, because he knew Rice had been incarcerated. Mendes testified that he had never contacted the ODRC to let them know that an incarcerated subject had a warrant against him. Instead, Mendes waited for the ODRC to contact his department when the defendant was ready to be transported or released. Williams testified that she had told Officer Mendes on August 31, 2012, that Rice was incarcerated. Because the record reflects that Officer Mendes knew Rice was incarcerated, yet made no attempt to serve Rice with the criminal complaint, the state bears significant responsibility for the 18-month delay. Thus, the second factor weighs slightly against the state and in favor of Rice.

{¶27} *Defendant's assertion of his right to a speedy trial.* The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right. *See Barker*, 407 U.S at 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (instructing courts "to weigh the frequency and force of objections as opposed to attaching significant weight to a purely pro forma objection"). Here, Rice knew of the charges at the latest on August 19, 2014, when he was arrested for the offenses following his

10

release from the LoCI. Yet he failed to assert his right to a speedy trial until December 1, 2014, when he filed his motion to dismiss the indictment against him. While "generally when the defendant has filed a motion to dismiss based on speedy trial violations, Ohio courts [have] weigh[ed] the third *Barker* factor in the defendant's favor," *State v. Watson*, 10th Dist. Franklin No. 13AP-148, 2013-Ohio-5603, ¶ 29, there is a significant four-month gap in time for which Rice bears some responsibility. *See State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 31. Thus, we conclude that the third factor weighs slightly in the state's favor.

{¶28} *Prejudice caused by the delay.* The fourth and final factor implicates the extent to which the defendant was prejudiced by the delay attributable to the state. *Barker,* 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Regarding this factor, the United States Supreme Court has held that the inquiring court should assess prejudice "in light of the interests the speedy trial right was designed to protect," including preventing oppressive pretrial incarceration, minimizing the accused's anxiety, and limiting the possibility that the passage of time will impair the accused's ability to mount a defense. *Id.* The latter concern is, by far, the most serious one. *Id.* When witnesses "die or disappear during a delay, the prejudice is obvious." *Id.* In aggravated cases, involving excessive pretrial delay, prejudice may be presumed despite the defendant's inability to identify particular testimony or evidence that has become unavailable due to the passage of time. *Doggett*, 505 U.S. at 655-56, 112 S.Ct. 2686, 120 L.Ed.2d 520.

{¶29} In *State v. Triplett*, 78 Ohio St.3d 566, 679 N.E.2d 290 (1997), the Ohio Supreme Court held that a 54-month delay was not excessively prejudicial to justify dismissal of an indictment on speedy-trial grounds. Here, the delay to Rice is

significantly shorter than the 54-month delay in *Triplett* and the eight-and-a-half-year delay in *Doggett*. Thus, we decline to find the 18-month delay to be automatically prejudicial to Rice. *Compare State v. Williams*, 10th Dist. Franklin No. 13AP-992, 2014-Ohio-2737, ¶ 21-22 (holding a four-year delay between the filing of the complaint and defendant's arrest to be prejudicial, warranting dismissal of the indictment); *see State v. Stevens*, 3d Dist. Logan No. 8-14-09, 2014-Ohio-4875, ¶ 24 (holding that, generally, courts "have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years").

{¶30} Rice argues, nonetheless, that because the 18-month delay cost him the possibility to serve the Butler County sentence concurrently with the Hamilton County sentence, he has shown prejudice. He relies on *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), which has been cited by the Eighth Appellate District for this proposition. *See State v. Boone*, 8th Dist. Cuyahoga No. 81155, 2003-Ohio-996, ¶ 28, citing *State v. Floyd*, 8th Dist. Cuyahoga No. 39929, 1979 Ohio App. LEXIS 101949 (Oct. 25, 1979), and *Smith*.

{¶31} In the *Smith* case, Smith was in federal prison, but he faced charges in state court. Smith wanted to be brought to trial on the state charges, and he sought repeatedly for six years to get a prompt trial. The state, however, refused to bring Smith to trial, because he was already in prison serving another sentence. The United States Supreme Court disagreed with the state. The Court noted that undue delay may cause the person to lose forever the possibility of at least partially concurrent sentences, that the conditions of his current custody may be harsher than otherwise, that the threat of another pending charge may be as oppressive as for a person who remains free and that long delays can impair a person's ability to defend against a pending charge. *Smith* at 378-379.

{¶32} But in *Smith*, the defendant's loss of an opportunity to serve concurrent sentences was but one of many circumstances over a six-year period noted by the United States Supreme Court in explaining why the state prosecutor in that case could not refuse to prosecute the defendant while he was serving the federal sentence. Several federal and state courts have rejected the broad reading of *Smith* that Rice asserts in this case. Those courts have refused to hold that an unjustified delay in bringing a defendant to trial violates the defendant's right to a speedy trial where, as here, the only prejudice alleged is the theoretical and speculative loss of the opportunity for the defendant to serve the sentence on the pending charge concurrently with the sentence in another case. *See United States v. White*, 985 F.2d 271, 276 (6th Cir.1993) (holding that the loss of the opportunity to serve concurrent sentences was "not sufficient to constitute 'substantial prejudice' to the defendant"); *United States v. Cabral*, 475 F.2d 715, 719-720 (1st Cir.1973) (holding defendant's allegation that he had lost the opportunity to serve concurrent sentences to be "highly speculative" and to "fall short of a demonstration of actual prejudice"); *see also United States v. Gregory*, 322 F.3d 1157, 1164 (9th Cir.2003) (holding sentencing prejudice to be insufficient as speculative where the court could have adjusted the subsequent sentence downward in light of time served for the previous sentence); *State v. Jones*, 4th Dist. Ross No. 95CA2128, 1996 Ohio App. LEXIS 2386, *7-8 (June 4, 1996) (holding the defendant's lost opportunity to bargain for concurrent sentences to be insufficient to show actual prejudice).

{¶33} Here, Rice does not claim that the 18-month delay caused him to suffer unduly oppressive incarceration, presumably because he was already serving a sentence for the Butler County offenses at the time the Hamilton County complaint was filed against him. Nor does he allege that he suffered any anxiety as a result of

13

the delay. Rice, moreover, did not argue in his motion to dismiss that the delay prejudiced his defense. Instead, he has asserted only that the period of pretrial delay deprived him of an opportunity to serve concurrent sentences for the Butler County and Hamilton County offenses. We agree with those courts that have held that a speculative opportunity to serve concurrent sentences is insufficient by itself to set forth the necessary prejudice under the fourth *Barker* factor. As a result, we conclude that the fourth factor weighs in favor of the state.

{¶34} A balancing of the four factors in the *Barker-Doggett* analysis shows that two are weighted in Rice's favor and two factors are weighted in the state's favor. Although we agree with Rice that the state was dilatory in its efforts to bring him to trial, we find no evidence that its acts were willfully orchestrated to gain a tactical advantage. While Rice made a somewhat delayed effort to assert his speedy-trial right, he has not demonstrated any actual prejudice to his defense. We thus cannot conclude that Rice's constitutional speedy-trial rights were violated.

### Statutory Speedy-Trial Rights

{¶35} Rice next argues that the trial court erred in denying his motion to dismiss, because the state violated his statutory speedy-trial rights under R.C. 2941.401.

{¶36} R.C. 2941.401 protects the right of a criminal defendant who is incarcerated to have other charges against him brought to trial. It provides in relevant part as follows:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he caused to be

14

delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. * * *

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof. * * *

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

{¶37} Rice argues that the state violated R.C. 2941.401 by failing to exercise reasonable diligence in attempting to notify him of the charges against him. He relies on a series of appellate cases that have held that the state had an implied duty of "reasonable diligence" under R.C. 2941.401 to apprise the warden of the relevant institution of charges against an inmate before the defendant's duty to request disposition of the charges is triggered under the statute. *See State v. Boone*, 8th Dist Cuyahoga No. 81155, 2003-Ohio-996, ¶ 28 (holding that R.C. 2941.401 imposed an implied duty of reasonable diligence on the state and noting a split of authority among Ohio appellate districts on the issue). But these cases predate the Ohio

Supreme Court's opinion in *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471.

{¶38} In *Hairston*, the Ohio Supreme Court was asked to determine whether R.C. 2941.401 places a duty of reasonable diligence upon the state to discover the whereabouts of an incarcerated defendant against whom charges are pending. Hairston had been indicted for aggravated robbery, kidnapping, and robbery in October 2000. A summons was sent to Hairston's home address, but Hairston did not receive it, because he was in the county jail waiting to be transferred to ODRC because his parole had been revoked. When Hairston failed to appear at his arraignment, a capias was issued in November 2000 for his arrest. Finally, in June 2001, a detainer was served on Hairston, advising him of the charges in the October 2000 indictment. Hairston argued the state's failure to exercise reasonable diligence to discover his whereabouts required dismissal of the charges under R.C. 2941.401. The trial court denied the motion, but the Tenth Appellate District reversed and ordered that the charges be dismissed with prejudice. *Id.* at ¶ 7-9.

{¶39} The Ohio Supreme Court disagreed with the Tenth Appellate District's interpretation of R.C. 2941.401. It found R.C. 2941.401 to be unambiguous and "[to] place the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition." *Id.* at ¶ 20. Thus, the Supreme Court held that the statute imposes no duty upon the state "until such time as the incarcerated defendant provides the statutory notice." *Id.* In reaching this determination, the court held that the statute did not allow a defendant to avoid prosecution simply because the state failed to locate him. *Id.* at ¶ 25.

16

{¶40} Thus, the Supreme Court in *Hairston* reversed the Tenth District's decision, finding that because Hairston did not provide the requisite notice to the prosecuting attorney or the court, he never triggered the process that would have caused him to be brought to trial within 180 days of his notice and request. The Supreme Court acknowledged that under the facts of the case, it was apparent the warden had never had knowledge of the charges pending against Hairston. *Id.* at ¶ 21.

{¶41} We similarly apply the wording of the statute as written. Because the record reflects that the warden did not have any knowledge that charges had been filed against Rice, and Rice did not exercise his rights under R.C. 2941.401, we hold that R.C. 2941.401 can have no application in this case. Thus, the state violated no statutory speedy-trial requirement under R.C. 2941.401. *See State v. Savage,* 12th Dist. Madison Nos. CA 2014-02-002, CA2014-02-003, CA2014-03-006, and CA2014-02-007, 2015-Ohio-574, ¶ 10-29; *State v. Hubbard*, 12th Dist. Butler No. CA2014-Ohio-03-063, 2015-Ohio-646, ¶ 27-40; *State v. Ondrusek*, 9th Dist. Lorain No. 09CA009673, 2010-Ohio-2811, ¶ 2-11.

{¶42} Moreover, we find Rice's reliance on *State v. Williams*, 4th Dist. Highland No. 12CA12, 2013-Ohio-950, and *Cleveland Metroparks v. Signorelli*, 8th Dist. Cuyahoga No. 90157, 2008-Ohio-3675, to be misplaced. As the Twelfth Appellate District pointed out in *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 38-39,

> In both *Williams* and *Signorelli*, the Fourth and Eighth Appellate
> Districts, respectively, found that an incarcerated defendant's speedy-
> trial rights had been violated. *Williams* at ¶ 21; *Signorelli* at ¶ 25.
> However, in both those cases, the inmates-defendants had

17

substantially complied with the requirements of R.C. 2941.401 by notifying the prosecutor and the trial court of their incarceration. In *Williams*, the defendant sent a notice of incarceration and a request for disposition to the prosecutor prior to an indictment being filed against him. *Williams* at ¶ 3. In *Signorelli*, the defendant, who was imprisoned due to a conviction in an unrelated case, had his attorney appear before the trial court and inform the court and prosecutor of his incarceration. *Signorelli* at ¶ 5, 22. Additionally, the defendant in *Signorelli* filed "a time stamped R.C. 2941.401 notice of availability with motion with the Euclid Municipal Court, Clerk of Court, informing the court that he was currently in Lake County Jail." *Id.* at ¶ 22. Unlike the defendants in *Williams* and *Signorelli*, Hubbard did not act or seek to comply with the requirements of R.C. 2941.401 as he did not inform either the trial court or the prosecutor of his incarceration. The 180-day jurisdictional limitation was, therefore, not triggered in the present case.

{¶43}  Similarly, here, Rice took no such steps, and we, like the Twelfth District in *Hubbard*, find those cases to be inapplicable to Rice's statutory speedy-trial claim. We, therefore, overrule Rice's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**DEWINE, J.,** concurs.
**CUNNINGHAM, P.J.,** dissents.

**CUNNINGHAM, P.J.,** dissenting.

{¶44}  I agree with the majority that Rice's statutory speedy-trial rights were not violated by the state's failure to act with reasonable diligence. However, I cannot

agree with the majority's conclusion that Rice's constitutional speedy-trial rights were not violated in this case under the four-factor analysis in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). I would reverse the trial court's decision because (1) the first three factors of the *Barker* analysis weigh heavily against the state, and (2) existing precedent of the Ohio Supreme Court and this court require a presumption of prejudice under the fourth *Barker* factor. Because I am convinced all four factors favor Rice, I would hold that his convictions must be reversed and the charges against him dismissed. I, therefore, respectfully dissent from that part of the majority's opinion that holds otherwise.

{¶45} I agree with the majority that the 18-month delay in this case is presumptively prejudicial and requires an inquiry into the remaining *Barker* factors. And while I also agree with the majority that the second factor, the reason for the delay, weighs against the state, I disagree with its conclusion that any delay weighs only "slightly" against the state. The majority's conclusion is clearly at odds with its correct determination that the state bore "significant responsibility" for the 18-month delay between issuance of the criminal complaint involving Rice and his eventual arrest on criminal charges.

{¶46} Here, the record reflects that the state, despite knowing Rice was incarcerated in Ohio, waited 18 months to serve him with a copy of the complaint charging him with the offenses. Teresa Williams with the APA testified that on August 31, 2012, during a phone conversation with Police Specialist Mendes concerning Rice, she specifically informed Mendes that Rice was in custody in Butler County, and that because the APA had a hold on him, he would not be leaving the jail even if he posted bond. Mendes testified that he was aware Rice was facing charges in Butler County and prison time for those offenses, yet he filed the complaint and

19

issued the arrest warrant to Rice's home address. When the warrant was returned for lack of service, Mendes did nothing further to serve Rice with a copy of the complaint. He offered no reason for the 18-month delay. He testified that in his ten years as a police officer it was normal procedure to let criminally-accused prisoners serve out an existing prison sentence before arresting them on any new charges.

{¶47} I would conclude that such an 18-month delay is unnecessarily long in the context of a relatively straightforward prosecution like this one, where the state was able to rely solely on the evidence to which it had access shortly after developing Rice as a suspect in the case, and where Rice did not act to cause the delay. *See State v. Grant*, 103 Ohio App.3d 28, 34, 658 N.E.2d 326 (9th Dist.1995); *State v. Smith*, Cuyahoga No. 83022, 2003-Ohio-7076, ¶ 12-20 (holding that an 18-month delay weighed heavily against the state under the second *Barker* factor where the state had failed to act with reasonable diligence, and the defendant had done nothing to evade prosecution); *Cleveland v. White*, 8th Dist. Cuyahoga No. 99375, 2013-Ohio-5423, ¶ 15 (holding that the state's negligence weighed heavily in favor of the defendant under the second *Barker* factor where the record reflected that the defendant was unaware of the pending charges against him, and that the city had made no attempt to locate the defendant until he was subsequently arrested on unrelated charges); *Compare State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 28 (weighing the fact that the defendant had been informed by the victim's mother on more than one occasion that a warrant was supposed to have been sent to Toledo authorities in the court's discussion relating to the state's negligence in causing the delay under the second *Barker* factor). Consequently, I would conclude that the second factor weighs heavily against the state, and that this conclusion directly impacts an assessment of the fourth factor.

{¶48} I would also weigh the third factor in Rice's favor. The record reflects that Rice did not know of the impending charges in this case until he was arrested on August 19, 2014, and thus could not have demanded a speedy trial during this time frame. Rice, moreover, did nothing to precipitate the 18-month delay in this case. *Compare State v. Triplett*, 78 Ohio St.3d at 570, 679 N.E.2d 290 (holding that the defendant's refusal to accept certified mail service contributed to a 54-month delay). The majority weighs against Rice and in favor of the state the four-month delay that elapsed from Rice's arrest and indictment to his counsel's filing of the motion to dismiss. But the record reflects that Rice's motion to dismiss contained numerous exhibits that precipitated an evidentiary hearing on the motion. While his counsel could have conceivably proposed his argument to the court at an earlier stage of the proceedings, given the amount of evidence presented with the motion, this was "not a case of last-minute maneuvering" by Rice. *See State v. Page*, 5th Dist. Fairfield No. 02CA69, 2003-Ohio-3856, ¶ 13 (holding that the defendant timely invoked his speedy-trial right where he waited four and one-half months to file his motion to dismiss). As a result, I would not hold this delay against Rice; I would, instead, conclude that this factor also weighs in favor of Rice.

{¶49} Finally, with respect to the fourth factor, the resulting prejudice to Rice, the majority requires Rice to show actual prejudice. But both the Ohio Supreme Court in *State v. Selvage*, 80 Ohio St.3d 465, 687 N.E.2d 433 (1997), and this court in *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060 (1st Dist.), have presumed prejudice where the state has failed to exercise reasonable diligence in prosecuting a criminally-accused defendant, because "the impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' " *Selvage*

at 469, quoting *Doggett*, 505 U.S. at 655; *see also, Sears* at ¶ 16, quoting *Doggett*, 505 U.S. at 655. In *Selvage*, the Ohio Supreme Court affirmed the trial court's dismissal of an indictment against a criminal defendant for a violation of her constitutional speedy-trial rights. In that case, the state filed a criminal complaint against Selvage, but it failed to act with reasonable diligence in commencing prosecution against her. The Supreme Court held the ten-month delay from the filing of the felony criminal complaint to her indictment was presumptively prejudicial, and it credited the trial court's finding that the ten-month delay in prosecuting Selvage had "presumptively prejudiced" her defense. *Id.* at 468 and 471. The *Selvage* court held that "[c]onsideration of prejudice is not limited to the specifically demonstrable, and * * * affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* at 465, quoting *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶50} In *Sears*, this court affirmed the dismissal of charges against an accused, holding that the nine-month delay from the filing of the complaint, which had charged Sears with a first-degree misdemeanor, to the time of his arrest violated Sears' constitutional speedy-trial rights. Following the Ohio Supreme Court's opinion in *Selvage* and the United States Supreme Court's opinion in *Doggett,* we held the nine-month delay to be presumptively prejudicial. *Sears* at ¶ 12. We found the remaining *Barker* factors also weighed against the state. We held that the state's failure to serve the warrant and complaint upon Sears was the result of a lack of diligence, and that, therefore, the second factor, the reason for the delay, should be weighed against the state. *Id.* at ¶ 13-14. We further concluded that the third factor weighed in Sears's favor, since Sears knew nothing of the complaint or warrant prior to his arrest. *Id.* at ¶ 15. Finally, with respect to the fourth *Barker* factor, we held

that "where, as here, the state has made an official accusation, but then fails to use any reasonable diligence to let its accusation be known to the defendant, prejudice is presumed." *Id.* at ¶ 16. Accordingly, we affirmed the trial court's dismissal of the charges against Sears. *Id.* at ¶ 17-18.

{¶51} Here, the 18-month delay is longer than the delay in either *Selvage* or *Sears.* Moreover, the record in this case reflects that the state, rather than failing to exercise reasonable diligence to locate Rice (as in *Selvage* and *Sears)*, instructed the sheriff to serve Rice at his home knowing Rice was in police custody. Rather than ignore the holdings in these two cases, as the majority does, I would simply follow them. I would hold that because the first three factors weigh heavily against the state, under the facts of this case, Rice need not demonstrate actual prejudice. Instead, prejudice may be presumed under the fourth factor. *See State v. Grant*, 12th Dist. Butler No. CA2003-05-114, 2004-Ohio-2810, ¶ 42 (acknowledging that presumptive prejudice to a defendant and the state's reason for the delay are directly related to each other under the *Barker* analysis).

{¶52} I recognize that presumptive prejudice cannot, by itself, carry a Sixth Amendment claim without regard to the other *Barker* factors. Here, however, where the other three *Barker* factors weigh strongly in Rice's favor and against the state, I would not condone the state's prolonged and unjustifiable delay in prosecuting Rice. Rather, I would find the delay presumptively prejudicial to Rice under *Selvage* and *Sears.* As a result, I would reverse the trial court's decision denying the motion to dismiss, reverse Rice's convictions, and dismiss the charges against him.

Please note:
    The court has recorded its own entry this date.