[Cite as *State v. Goodgame*, 2025-Ohio-1901.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

RODNEY GOODGAME,

      Defendant-Appellant.

CASE NO. 2024-L-043

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 000227

## OPINION AND JUDGMENT ENTRY

Decided: May 27, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Paul J. Lubonovic*, Assistant Public Defender, 100 West Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Appellant, Rodney Goodgame ("Goodgame"), appeals the judgment of the Lake County Court of Common Pleas, denying his motion to dismiss for speedy trial violations.

{¶2} This case arises from Goodgame's conviction for Grand Theft, a felony of the fourth degree, for stealing $21,528 worth of cell phones from Walmart in May 2021. Goodgame filed a motion to dismiss for violations of his statutory and constitutional speedy trial right which was denied. On appeal, Goodgame asserts that the trial court

erred when it determined that his constitutional right to speedy trial was not violated due to the 19-month delay between indicting Goodgame and his arrest on that indictment. For the reasons stated below, we affirm the decision of the Lake County Court of Common Pleas, denying Goodgame's motion.

**Substantive and Procedural Facts**

{¶3}    A complaint was filed against Goodgame for Theft on June 9, 2021, in the Willoughby Municipal Court. *Cty. of Eastlake v. Rodney Goodgame*, Willoughby M.C. No. 21CRA01336 (Aug. 3, 2021) (the "Municipal Court Case"). Goodgame was arrested on July 6, 2021, and posted bond the next day, on July 7, 2021. Goodgame filed twice for a continuance of the preliminary hearing in the Municipal Court Case, and both were granted. Included with his motions was a waiver of his speedy trial right. The preliminary hearing was held on August 3, 2021. The municipal court determined there was no probable cause at the hearing and dismissed the case.

{¶4}    On March 4, 2022, a grand jury returned a bill in a secret indictment for one count of Grand Theft against Goodgame, arising from the same circumstances involving stolen cell phones from Walmart in 2021. A warrant on the indictment was issued to the Lake County Sheriff on March 9, 2022. The warrant was executed by the Lake County Sheriff's Department on November 2, 2023, 19 months after being indicted. Goodgame was released on his own recognizance on November 3, 2023. Defense counsel was appointed on November 8, 2024.

{¶5}    Goodgame requested a continuance of the December 21, 2023, plea hearing. The request was granted, and the plea hearing was held on January 18, 2024. Goodgame filed a demand for a bill of particulars on December 27, 2023. The State

provided the bill of particulars to Goodgame on January 9, 2024. The State requested discovery from Goodgame but did not receive a response. Goodgame filed a waiver of jury trial on January 18, 2024. A bench trial was scheduled for March 15, 2024.

{¶6} On March 7, 2024, Goodgame filed a motion to dismiss asserting speedy trial violations. Specifically, Goodgame argued violations of the statutory time limit provided by R.C. 2945.71(C)(2) and in violation of the speedy trial rights guaranteed by the United States Constitution. The March 15, 2024 bench trial was converted to a hearing on Goodgame's motion to dismiss.

{¶7} Deputy William A. Leonello ("Deputy Leonello") and Lieutenant Bryan Bowen ("Lt. Bowen") testified for the State at the hearing on Goodgame's motion to dismiss. Deputy Leonello testified that he works in the court service division of the Sheriff's Department and one of his duties is civil processing which includes serving warrants and court orders. Deputy Leonello clarified that by serving a warrant he meant that the individual was arrested on the warrant. Deputy Leonello indicated that he was the individual responsible for locating and serving the indictment and warrant on Goodgame.

{¶8} Deputy Leonello stated that he went to the last known address for Goodgame on record (an apartment complex) and was informed by the rental agent that Goodgame no longer resided there. The agent gave Deputy Leonello a forwarding address of a residence in Euclid, Ohio. Deputy Leonello drove to the Euclid residence and was greeted by a woman identifying herself as Goodgame's aunt. The woman explained that Goodgame was not allowed at the house because he would fight with her sons. The aunt did not indicate to Deputy Leonello that she knew where to locate

Goodgame, but that she would attempt to let Goodgame know that the Sheriff's Department had papers for him.

{¶9} Deputy Leonello testified that it was not until November 2, 2023, that confirmation was sent to the Sheriff's Department that Goodgame had been arrested and was being held in Cuyahoga County. Deputy Leonello testified that he went that same day to serve Goodgame and transport him to Lake County. Deputy Leonello later learned that on July 7, 2022, a LEADS update was entered indicating a change in address for Goodgame. Deputy Leonello explained to the trial court that he does not follow up and look for alerts unless a Clerk brings it to his attention that there was a change, so he was not made aware of the July 2022 LEADS address update.

{¶10} Lt. Bowan testified that the Lake County Sheriff's Department holds anywhere between 900 to 1,000 outstanding warrants. According to Lt. Bowan, the Sheriff's Department has a process for going through the warrants to make sure they are still good, but that it does not include individually checking for updates on each warrant.

{¶11} On March 25, 2024, the trial court denied Goodgame's motion to dismiss for speedy trial violations. The bench trial was held on April 19, 2024, and Goodgame was found guilty. Goodgame was sentenced on May 23, 2024, to one year of community control with the conditions that Goodgame serve 60 days in the Lake County Jail, with two days credit for time served, plus costs.

**Assignment of Error**

{¶12} Goodgame now timely appeals the trial court's denial of his motion to dismiss for speedy trial violations, and asserts one assignment of error:

Case No. 2024-L-043

{¶13}   [1.] "Goodgame was deprived of his right to a speedy trial under U.S. Const. Amend. IV and Ohio Const. Art. I § and the trial court erred when it denied his motion to dismiss. (Dkt. 58 p. 4-6.)"

**Issues for Review**

{¶14}   Under his assignment of error, Goodgame directs this Court to three specific issues for review:

{¶15}   First, Goodgame asks us to review whether the trial court correctly calculated the length of delay for speedy trial purposes.

{¶16}   Second, whether the trial court correctly weighed the *Barker* factors when determining that Goodgame's delayed assertion of his speedy trial right weighed in favor the State.

{¶17}   Third, Goodgame asks this Court to review whether the trial court conducted a proper prejudice analysis when determining the delay in serving Goodgame did not prejudice him.

**Standard of Review**

{¶18}   On appeal, the reviewing court accepts the trial court's facts, and freely review the application of law to those facts. "Speedy-trial issues present mixed questions of law and fact." *State v. Brown*, 2023-Ohio-3017, ¶ 44 (11th Dist.), citing *State v Kist*, 2007-Ohio-4773, ¶ 18 (11th Dist.). "We accept the facts as found by the trial court on some competent, credible evidence but freely review the application of the law to the facts." *Id. See also State v. Long*, 2020-Ohio-5363, ¶ 15; *State v. Bruce*, 2018-Ohio-1980, ¶10 (11th Dist.). Therefore, we review the trial court's application of the law to the facts of Goodgame's case.

## Speedy Trial

{¶19} Constitutional and statutory speedy trial rights are coextensive. "The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution." *Brown* at ¶ 45, quoting *Kist* at ¶ 18. "The statutory speedy-trial provisions set forth at R.C. 2945.71 et seq. are coextensive with these constitutional rights." *Id.* As such, the two exist in the same space yet approach speedy trial differently.

{¶20} Unlike a prima facie showing required for a statutory violation, a constitutional speedy trial claim requires the trial court conduct a factor weighing analysis. "To determine whether there has been a denial of a defendant's constitutional right to a speedy trial, the court considers four factors identified in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]: '(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant.'" *Long* at ¶ 14, quoting *State v. Hull*, 2006-Ohio-4252, ¶ 22.

> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right . . . . Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent on the peculiar circumstances of the case. . . . Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker at* 530-531. Therefore, Barker's four factor test serves as a guide for trial courts evaluating constitutional speedy trial claims.

{¶21} While constitutional and statutory speedy trial rights coexist in the speedy trial right space, when evaluating a constitutional speedy trial claim, the focus is on the prejudice of the delay and the analysis is not constrained by the statutory timeline. "'[A]lthough the statutory and constitutional provisions are coextensive, the constitutional guarantees may be found to be broader than speedy trial statutes in some circumstances.'" (Bracketed text in original.) *State v. Knott*, 2024-Ohio-2289, ¶ 19 (2d Dist.), quoting *State v. O'Brien*, 34 Ohio St.3d 7, 9. "The Supreme Court of Ohio has recognized that ""there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority[.]"""" (Bracketed text in original.) *Id.* ""In examining a constitutional claim on speedy trial grounds, the statutory time requirements of R.C. 2945.71 and 2945.73 are not relevant; instead, courts should employ the balancing test enunciated by the United States Supreme Court [in *Barker v. Wingo*.]"" *State v. Ginley*, 2024-Ohio-3294, ¶ 147 (8th Dist.). As Goodgame asserts on appeal that his constitutional speedy trial rights were violated, our review begins with the length of delay and whether it triggered a full *Barker* analysis.

**Length of Delay**

{¶22} The first of the *Barker* factors considers the length of delay. Goodgame contends that the trial court did not properly calculate the time that lapsed for constitutional speedy trial purposes in its analysis.

{¶23} The trial court found that the 19 months between Goodgame's indictment and arrest were presumptively prejudicial, meeting the threshold inquiry required to trigger an analysis of the other three *Barker* factors. *See Barker*, 407 U.S. 514, at 531 ("length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for the inquiry into the other factors that go into the balance"). *See also State v. Triplett*, 1997-Ohio-182, ¶ 17 (a delay of one year is generally enough to trigger an analysis of the remaining *Barker* factors). We concur with the trial court's conclusion here.

{¶24} Applying *Barker*, "some delay which is presumptively prejudicial," combined with the application of *Triplett* finding that a delay of one year is generally enough to trigger the *Barker* analysis, the trial court focused its analysis on the delay between Goodgame's indictment and arrest as the triggering time frame, and any lack of diligence on the part of the State.

{¶25} Goodgame avers that the trial court should have found that the relevant length of time began with the filing of the complaint in the Municipal Court Case, thereby extending the length of delay from 19 months to 26 months and necessitating that the trial court assign more weight to the factor. Goodgame cites to *State v. Meeker*, 26 Ohio St.2d 9 (1971), to support his contention. *Meeker* is, however, distinguishable from this case.

{¶26} In *Meeker*, the defendant committed acts at the same time and place in June 1963 that constituted four different crimes. *Id.* at 17. With knowledge, the State elected to accept a guilty plea on one of the crimes which was later voided by a post-conviction order. *Id.* at 9. In April of 1969, the State returned an indictment on the remaining three crimes. *Id.* at 17. The Supreme Court of Ohio held that this violated the

Case No. 2024-L-043

defendant's speedy trial right, explaining that "[c]onsidering the basic purposes of the constitutional right to a 'speedy trial,' we conclude that such constitutional guarantees are applicable to unjustifiable delays in commencing prosecution as well as to unjustifiable delays after indictment." *Id.* at 16-17. Unlike Meeker, the initial charges against Goodgame were dismissed, and seven months passed where there were no charges pending against him. The *Barker* court stated that all that is required is "some delay which is presumptively prejudicial" to trigger the *Barker* analysis. *Barker*, 407 U.S. at 527. Here, the trial court found that 19 months had passed between Goodgame's indictment and service of the indictment. Therefore, the trial court determined that the delay was presumptively prejudicial, triggering an analysis of the remaining *Barker* factors. We agree with the trial court's analysis.

{¶27} Goodgame asks, however, that this Court to conclude that the relevant timeline begins with the filing of charges in the Municipal Court Case and ends with the service of the secret indictment. The period between the complaint being filed in the Municipal Court Case and its dismissal was three months. Alone, three months is not long enough to trigger the *Barker* analysis. The period after the Municipal Court Case was dismissed and the secret indictment was seven months. Seven months, even if the three months prior were included, is still not enough to trigger the *Barker* factors. The trial court determined that it was the 19 months delay from the secret indictment to service of the indictment that met the triggering threshold, and now Goodgame seeks to increase the weight of that factor by tacking on the Municipal Court Case time and the subsequent months where no charges were pending against Goodgame. We decline to do so. We agree that the trial court used the proper time frame. Notwithstanding, the United States

Case No. 2024-L-043

Supreme Court has held that a constitutional speedy trial claim does not apply to the "period before a defendant is indicted, arrested, or otherwise officially accused[.]" *U.S. MacDonald*, 456 U.S.1, 6 (1982), citing *U.S. v. Marion*, 404 U.S. 307. The Supreme Court has further explained:

> Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, see *United States v. Lovasco*, 431 U.S. 783, 788-789, 97 S.Ct. 2044, 2047-48, 52 L.E.2d 752 (1977), or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.
>
> . . .
>
> Similarly, the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause.

*MacDonald* at 7. Accordingly, Goodgame's attempt to raise a constitutional speedy trial claim arising from the seven-month delay between dismissal and secret indictment, is misguided.

{¶28} Goodgame additionally relies on the case, *State v. Selvage*, 1997-Ohio-287, to assert that the holding in *Marion* does not apply. However, Goodgame's case is factually distinguishable from *Selvage*. The defendant in *Selvage* had a complaint filed against her three months after the alleged criminal conduct. The complaint was never pursued, and the defendant in *Selvage* was never served with it. The indictment was filed thirteen months after the date of the offenses in *Selvage*. Further, in *Selvage*, other people implicated in the investigations were arrested significantly sooner than the defendant, who was not arrested until seven months after those arrests occurred. The court in *Selvage* noted that the defendant in that case was "left in limbo for seven months and not given

an opportunity to answer the criminal charge against her." *Selvage* at ¶17. "These facts led the trial court to conclude that the state did not act with reasonable diligence in commencing prosecution against appellee." *Id.* Here, unlike *Selvege*, there was a period of time in between the filing of the complaint in the Municipal Court Case and the indictment where no charges were pending against Goodgame. Therefore, *Selvage* does not apply.

**Reason for Delay**

{¶29} The trial court's *Barker* analysis examined the reason for delay, attributing negligence to the State in its lack of diligence in locating and serving Goodgame.

{¶30} As noted above, we agree with the trial court's finding that the 19-month delay between indictment and arrest was the appropriate relevant timeline to examine and was long enough to trigger the full *Barker* factor analysis. We further agree that although the State could have been more diligent in locating Goodgame, the delay was reasonable. *Barker* explains that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered . . . ." *Barker* at 531. Here, the government's delay was not intentional. There was not a complete lack of diligence to locate Goodgame, but rather, not enough manpower to manually check each warrant for updates. As soon as Goodgame's location was revealed, Deputy Leonello acted and served Goodgame.

{¶31} Finally, Goodgame cites to *Doggett v. U.S.*, 505 U.S. 647 (1992) to support his position that Goodgame was prejudiced by the government's delay. In *Doggett*, the

Supreme Court held that a presumption that a pretrial delay prejudiced the defendant compounds over time. *Doggett* at 657.

{¶32} The delay in *Doggett,* however, stands in stark contrast to the delay in the present case. In *Doggett*, the delay between the defendant's indictment and arrest was 8 ½ years. *Id.* at 658. After Doggett was indicted on federal charges, he left the country before he could be arrested, and later reentered the country. Doggett lived openly for years staying within the bounds of law, and the government took no action to locate him. In the present case, significantly less time elapsed between indictment and arrest. Further, there simply was not enough manpower available to maintain and act on each update of the 900 to 1000 active warrants. Once Deputy Leonello was alerted to Goodgame's location, he executed the warrant the same day. Accordingly, the trial court assigned the appropriate weight in its analysis to the State's delay.

**Assertion of Speedy Trial**

{¶33} Goodgame contends that the trial court erred in weighing the third *Barker* factor against him, for asserting his right to a speedy trial late. Goodgame's counsel was appointed on November 8, 2023. Goodgame's motion to dismiss, based on alleged speedy trial violations, was filed on March 7, 2024, eight days before the bench trial was set. The trial court determined that Goodgame's four-month delay in asserting his speedy trial rights weighed slightly in the State's favor.

{¶34} The trial court relied on *State v. Rice*, 2015-Ohio-5481, ¶ 27 (1st Dist.), where defendant's four-month delay in asserting trial right weighed slightly in favor of the State, to determine that Goodgame's four-month delay in asserting his speedy trial rights

weighed only slightly in the State's favor. Goodgame contends that *Rice* is inconsistent with *Barker*. We disagree.

{¶35} While *Barker* does reject "the rule that a defendant who fails to demand speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of a right. . . . It allows the trial court to exercise a judicial discretion based on the circumstances . . . [and] would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker v. Wingo*, 407 U.S. 514, at 528-529. *Barker* does not preclude *any* consideration of the defendant's timeliness in asserting their speedy trial right. It allows courts to attribute more weight to a defendant who asserts their rights with "frequency and force." *Id.* at 529. The *Barker* court explained that the defendant "has some responsibility to assert a speedy trial claim," but that to show waiver "we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made." *Barker* at 529. The *Barker* court goes on to say on this issue, "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. "Whether and how a defendant asserts his right is closely related to the other factors . . . The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . . We emphasize that failure to assert the right will make it difficult for a defendant to prove that

Case No. 2024-L-043

he was denied a speedy trial." *Id* at 531-532. Therefore, *Barker* instructed that this factor is particularly fact sensitive.

{¶36} The trial court weighed Goodgame's delay in asserting his right only slightly in the State's favor based on his four-month delay in asserting his right, arguing that Goodgame could have asserted his right immediately after arraignment. Balancing Goodgame's responsibility to assert the right, acknowledging that the frequency and force of Goodgame's assertion should weigh in his favor, we agree with the trial court's rationale.

{¶37} Goodgame contends that the trial court, relying on *State v. Walker*, 2007-Ohio-4666 (10th Dist.), improperly weighted Goodgame's delay in asserting the right in favor the State, arguing that the assertion of the right should only attribute weight in favor of the defendant, not against the defendant, and that the court in *Walker* misapplied the law. However, other Ohio courts have applied the third *Barker* factor similarly. *See State v. McCain*, 2016-Ohio-4992, ¶ 17 (9th Dist.); *State v. Keaton*, 2017-Ohio-7036, ¶ 14 (10th Dist.); *State v. Jackson*, 2016-Ohio-5196, ¶ 14 (1st Dist.); *State v. Bailey*, 2005-Ohio-5506, ¶ 9 (2d Dist.); *State v. Robinson*, 2017-Ohio-6895, ¶ 16 (8th Dist.).

{¶38} The trial court appropriately weighed Goodgame's four-month delay in asserting his speedy trial right slightly against his contention of a constitutional speedy trial claim, and in favor of the State's argument against one.

**Prejudice**

{¶39} The fourth and final factor in the *Barker* analysis is the basis of Goodgame's third issue for review under his sole assignment of error. Goodgame contends that the trial court did not properly weigh the prejudice of the State's delay against him.

Case No. 2024-L-043

Specifically, Goodgame argues that his defense was impaired by the loss of surveillance video due to Walmart's six-month loss prevention limited retention policy, the limited ability to obtain employment records, and a similar six-month limit on the ability to obtain cell phone records.

{¶40} The trial court reasoned, "counsel for Defendant suggested during closing argument that video is retained for six months. The offenses in questions [sic] are alleged to have occurred in May 2021. Accepting counsel's argument then, any potential surveillance video would have been deleted around November 2021, well before Defendant was even indicted. The same can be said for any potential cell phone records. Regarding employment records, neither party had success reaching the Canadian-based employment agency [Goodgame was employed through]. The failure to obtain records from this agency is not due to any delay; it is due to an apparent lack of cooperation. In short, the Court finds whatever actual prejudice Defendant has suffered with respect to the above records is not so great to warrant dismissal."

{¶41} We agree with the trial court's rationale on this factor as well. While the State delayed 19 months from indictment to arrest, Goodgame was no more prejudiced by the delay than the State was. The State was at the same disadvantage in obtaining records as was Goodgame, prior to the indictment. The delay in and of itself did not create any difficulty that Goodgame would not have similarly faced in the months after had the indictment been brought immediately after the complaint in the Municipal Court Case had been dismissed. The trial court properly denied Goodgame's motion to dismiss for speedy trial.

Case No. 2024-L-043

{¶42} Accordingly, Goodgame's sole assignment of error is without merit, and we affirm the decision of the Lake County Court of Common Pleas.

MATT LYNCH, J., concurs,

JOHN J. EKLUND, J., concurs with a Concurring Opinion.

---

JOHN J. EKLUND, J., concurs with a Concurring Opinion.

{¶43} I concur in the majority's judgment but not the majority's conclusion that the relevant delay in trying Appellant was reasonable.

{¶44} The trial court used the proper framework for considering Appellant's claim of a violation of his speedy trial rights under the United States and Ohio Constitutions by analyzing and weighing the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).

{¶45} Based on the United States Supreme Court's decisions in *United States v. Marion*, 404 U.S. 307 (1971), and *United States v. MacDonald*, 456 U.S. 1 (1982), I agree that the time for speedy trial compliance here began when Appellant was indicted. In any event, whether the speedy trial "clock" started running upon Appellant's 2021 arrest or on the day he was indicted in early March 2022, the length of the delay was long enough to be presumptively prejudicial and invoke an analysis of the other *Barker* factors.

{¶46} But I would not find, as the majority does, that the delay was "reasonable." The trial court certainly did not. It found the delay was presumptively unreasonable. Then the court found the delay was caused by the State's negligence in not pursuing service of the warrant on Appellant more diligently. Then it found only that the excuses the State offered – too many warrants, not enough people to "work" all the warrants, Appellant moved outside of Lake County (we don't know when) – were "reasonable" ones. That

Case No. 2024-L-043

does not make the *delay* reasonable. If anything, it only lessens the degree to which the unreasonable delay is weighted against the State.

{¶47} The majority says that "[a]s soon as Goodgame's location was revealed, Deputy Leonello acted and served Goodgame." *That ignores the fact that Goodgame's location was revealed in the LEADS system in July 2022.* So, the State had that information for almost 16 months before it served and arrested Goodgame. That might not have been the deputy's fault, but it certainly was not Goodgame's.

{¶48} Under *Barker*, the State's negligence should be weighted "less heavily" against the State than "deliberate" actions or inaction. *Id*. at 531. But here, the trial court weighed it only "slightly" against the State. Since only the State, its voters, and its agents have the authority and ability to equip and staff its law-enforcement resources, the court should have found that the State's negligence weighed against the State, but less heavily than a deliberate attempt to delay.

{¶49} In the end, though, I concur because of the trial court's (and majority's) cogent analysis of whether Appellant was prejudiced by the delay and their conclusion that he was not.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against the appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE MATT LYNCH,
concurs

JUDGE JOHN J. EKLUND,
concurs with a Concurring Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-L-043