[Cite as *State v. Jackson*, 2016-Ohio-5196.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-150657 |
| | | C-150658 |
| Plaintiff-Appellant, | : | C-150659 |
| | | C-150660 |
| vs. | : | TRIAL NOS. 11CRB-17976 |
| | | 11CRB-17973 |
| MARY JACKSON, | : | 11CRB-22815-A |
| | | 11CRB-22815-B |
| Defendant-Appellee. | : | |
| | | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: August 3, 2016

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jonathan Rengering*, Assistant Prosecutor, for Plaintiff-Appellant,

*Raymond Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellee.

**DeWine, Judge.**

{¶1}  These are appeals from a trial court's dismissal of criminal charges on speedy-trial grounds.  There was a four-year delay between the issuance of warrants and the defendant's arrest.   For more than a third of the time, the defendant was incarcerated in Ohio.  Because the state failed to exercise reasonable diligence to bring the defendant to trial, we must presume that she was prejudiced by the lengthy delay.  Thus, we uphold the trial court's dismissal of the charges.

## I.  Background

{¶2}  In June and July, 2011, warrants were issued for Mary Jackson's arrest. The state alleged that she had written bad checks to two businesses and failed to return a chainsaw she had rented from one of the businesses.   It wasn't until nearly four years later that Jackson was arrested on the charges.  Following her arrest, she filed a motion to dismiss, arguing that prosecution was barred by the statute of limitations and on speedy-trial grounds.

{¶3}  During the hearing on the motion, Detective Charles Zopfi recounted his efforts to find Jackson.  Detective Zopfi said that he had looked for Jackson at the Bellevue, Kentucky address that was listed on the checks she had written and on a rental agreement.   When he didn't find Jackson at the address, he asked around the neighborhood with no success.  Detective Zopfi was unable to come up with a different address for Jackson:  a query put to the LEADS system at the Regional Crime Information Center returned the same Bellevue, Kentucky address.  And several calls to the phone number Jackson had provided yielded no results.  Later, Detective Zopfi asked Bellevue police officers to periodically check the address and apprehend Jackson if possible.

{¶4} After about a month of searching for Jackson, Detective Zopfi turned the matter over to the warrants section in his district. According to Detective Zopfi, the warrants section "take[s] it from there" and "send[s] out cards to any last known addresses or any address that [it] might come up with in the future." Detective Zopfi further explained that the warrant officers "run queries routinely to see if [the] person has been recently picked up * * * and to see if there's any new addresses listed anywhere." As part of their job, warrant officers also send cards to the last known address to inform the person about the outstanding warrants. Detective Zopfi had no other involvement with the case until Jackson was stopped on June 29, 2015, for a traffic violation and arrested for the open warrants.

{¶5} For her part, Ms. Jackson testified that she had not lived at the Bellevue, Kentucky address listed on her checks since March 2011. For most of 2011, Ms. Jackson lived in a hotel in Florence, Kentucky, in friends' homes or in her car. In 2012, she began living at her grandfather's house at another address in Bellevue. Ms. Jackson was arrested in Butler County, Ohio, on May 21, 2012, on unrelated charges. She was subsequently convicted and sentenced to 18 months in prison. For those 18 months, Ms. Jackson was incarcerated in the Ohio Reformatory for Women in Marysville, Ohio and the Dayton Correctional Institute. When she got out of prison on October 12, 2013, she returned to Bellevue, Kentucky.

{¶6} At the conclusion of the hearing, the trial court determined that Jackson's prosecution was not barred by the statute of limitations but that the state had violated her constitutional speedy-trial rights. The court noted the lack of reasonable diligence on the state's part: "In this case there was an effort after the warrant but that effort stopped within the 28 or 30 days that [Detective Zopfi] aggressively tried to find her. And then the state did nothing. Even when she was

3

within its borders, nothing would occur." Thus, the court dismissed the charges against Jackson.

## II. Jackson's Speedy-Trial Rights were Violated

{¶7} The state contends that the trial court erred when it dismissed the charges on speedy-trial grounds. The gist of its argument is that because it acted with reasonable diligence in pursuing the charges against Jackson, the state should not be penalized for the four-year delay. Ms. Jackson responds that the four-year delay was "presumptively prejudicial" and violated her rights.

{¶8} Our review of the trial court's decision involves mixed questions of fact and law. "We give due weight to the inferences drawn from the facts found by the trial court as long as they are supported by competent, credible evidence. With respect to the trial court's conclusions of law, we employ a de novo standard of review, to determine whether the facts satisfy the applicable legal standard." *State v. Rice*, 1st Dist. Hamilton No. C-150191, 2015-Ohio-5481, ¶ 15, citing *State v. Terrell*, 1st Dist. Hamilton No. C-020194, 2003-Ohio-3044.

{¶9} The United States Supreme Court has instructed that determining whether a defendant's speedy-trial rights have been violated requires a flexible approach considering four factors: the length of the delay, the reason for the delay, the defendant's assertion of her speedy-trial rights and the resulting prejudice to the defendant from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶10} The first factor—the length of the delay—is a threshold inquiry. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay[.]" *Doggett v. United States,* 505 U.S. 647, 651-

4

652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The United States Supreme Court clarified what is meant by "presumptive prejudice" when considering the first factor:

> [A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.

*Id.* at 652, fn. 1. In *Doggett*, the court indicated that the threshold for inquiry into the other factors was somewhere around one year. *Id.* This court has concluded that a nine-month delay prompts further inquiry. *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, ¶ 12 (1st Dist.). Thus, the four-year delay in this case requires consideration of the remaining factors.

{¶11} The second factor—the reason for the delay—allocates fault for the delay. It is the state's burden to explain the reason for the delay:

> The prosecutor and the court have an 'affirmative constitutional obligation' to try the defendant in a timely manner. This 'constitutional duty' is not satisfied unless 'a diligent good faith effort' has been made to try the defendant promptly. On appeal, the prosecution has the burden of explaining the cause for pre-trial delay. Unexplained delay is weighed against the prosecution.

(Citations omitted.) *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir.1987). The state maintains that because it acted with reasonable diligence in pursuing the charges, it should not be faulted for the delay.

{¶12} We are not convinced that the state's actions in pursuing the charges were reasonably diligent. True, the court found that Detective Zopfi's efforts in the first month after issuance of the warrants were reasonably diligent. That diligence

5

was sufficient to end the inquiry into the statute-of-limitations claim: A case is considered commenced for purposes of the statute of limitations upon issuance of the warrants so long as the state has been reasonably diligent in executing the warrants. *See* R.C. 2901.13(F). Beyond Detective Zopfi's actions in the month after the warrants were issued, however, the court found that there was no effort on the part of the state.

{¶13} The state counters that it acted with reasonable diligence by turning the warrants over to the warrant officers after its initial efforts were unsuccessful. In considering a statutory speedy-rights challenge, the Twelfth Appellate District held that merely entering a warrant into a database and sending a warrant to a defendant's county of residence does not constitute reasonable diligence under R.C. 2945.72. *See State v. Baker*, 12th Dist. Fayette No. CA2008-03-008, 2009-Ohio-674, ¶ 17-19. *See also State v. Hayman*, 3d Dist. Seneca No. 13-09-22, 2010-Ohio-1264. The same goes here. There was no evidence that the state did anything to locate Ms. Jackson after the warrant officers took over. Notably, the state doesn't explain how, if its efforts were diligent, it was unaware that Jackson spent 18 months of the delay in Ohio correctional facilities. Surely had the "routine" queries discussed by Detective Zopfi actually been undertaken, the state would have discovered that Jackson was sitting in its prisons. We agree with the trial court that, save for the one month following the issuance of the warrants, the state was not reasonably diligent in pursuing the charges against Jackson. The second factor weighs against the state.

{¶14} The third factor—assertion of speedy-trial rights—does not strongly factor into this case. If a defendant sits on his speedy-trial rights, the factor weighs against the defendant. *See Barker*, 407 U.S. at 535-536, 92 S.Ct. 2182, 33 L.Ed.2d

101. But that was not the situation here. Jackson promptly asserted her speedy-trial rights upon her arrest.

{¶15} The *Barker* analysis culminates in a determination of whether the delay considered in the preceding three factors resulted in prejudice to the defendant. In *Barker*, the court analyzed prejudice in terms of the interests that were protected by speedy-trial rights. The court identified three interests: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the accused's anxiety and concern; and (3) the limitation of impairment of the accused's defense. *Id.* at 532. Neither the first nor second identified interest is at issue here: Ms. Jackson was not incarcerated for a protracted time on her charges, and she suffered no anxiety over the charges about which she had been unaware. The question boils down to whether her defense was impaired.

{¶16} "[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' " *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686, 120 L.Ed.2d 520. Ms. Jackson contends that any delay beyond the nine-month threshold set by *Sears* was prejudicial unless the state proved otherwise. But such a rule would eliminate consideration of the other factors. Instead, we approach the prejudice element as done in the closely analogous case *Doggett*.

{¶17} In *Doggett*, there was an eight-and-one-half-year delay between the defendant's indictment and arrest, and during six of those years, the government was "negligent" in bringing the defendant to trial. The court explained the impact of the long delay:

[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can

7

prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment [speedy-trial] claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

(Citation omitted.) *Id.* at 655-656.

{¶18} The question becomes at what point prejudice to the defendant is presumed so that she is relieved of showing actual prejudice to her defense. The *Doggett* court answered the question by focusing on the culpability of the state in failing to bring the defendant to trial:

Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness.

*Id.* at 657.

{¶19} In *Doggett*, the six-year portion of the delay attributable to the government's negligence in pursuing the defendant's arrest was sufficient to allow the court to presume prejudice to the defense. Because the presumptive prejudice of the delay had not been rebutted by the government nor mitigated by any acquiescence on the part of the defendant, the defendant was entitled to relief for violation of his speedy-trial rights. *Id.* at 658. *See Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, at ¶ 16 (prejudice caused by nine-month delay

presumed where "the state [] made an official accusation, but fail[ed] to use any reasonable diligence to let its accusation be known to the defendant"). *Compare State v. Triplett*, 78 Ohio St.3d 566, 679 N.E.2d 290 (1997) (54-month delay not prejudicial where defendant knew about charges against her, gave her address to police and then refused to accept certified mail at the address).

{¶20} As in *Doggett*, we have a lengthy delay brought on by the state's lack of reasonable diligence in the pursuit of charges. We conclude that Ms. Jackson was not required to show actual prejudice where there was a four-year delay occasioned by the state's lack of diligence. While she hasn't—and likely couldn't have—shown actual prejudice, the length of the delay and the state's inaction leads us to presume that Jackson was prejudiced. The court did not err in concluding that her speedy-trial rights had been violated. The sole assignment of error is overruled, and we affirm the trial court's judgments.

Judgments affirmed.

**CUNNINGHAM, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.