[Cite as *State v. Bush*, 2020-Ohio-1229.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :              APPEAL NO. C-190094
                                                 TRIAL NO. B-1605477
    Plaintiff-Appellee,          :

  vs.                            :              *O P I N I O N.*

DAMON BUSH,                       :

    Defendant-Appellant.         :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 31, 2020


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    Damon Bush appeals the judgment of the Hamilton County Common Pleas Court convicting him of nonsupport of dependents, in violation of R.C. 2919.21(B).  We find no merit in his sole assignment of error and we affirm his conviction.

## I. Background

{¶2}    On October 19, 2016, Bush was indicted on one count of nonsupport. He was arrested approximately 21½ months later on August 3, 2018.  Four months after his arrest, on December 4, 2018, Bush filed a motion to dismiss the indictment on the ground that his right to a speedy trial had been violated.  At a hearing on Bush's motion, Margie Priestle, an investigator in the Hamilton County Prosecutor's Office, testified that her job is to locate individuals who have been indicted for felony nonsupport and provide that information to the sheriff's office.  To ascertain a defendant's address, she interviews witnesses and researches various databases.

{¶3}    Priestle testified that in addition to the felony nonsupport warrant, Bush had four outstanding arrest warrants for contempt on child-support cases dating back to 2013, but sheriff's deputies had been unable to locate him.  Her research revealed that on three occasions that predated the outstanding contempt and felony warrants, Bush had been arrested and processed at the Hamilton County Justice Center.  In 2003 and in 2005, Bush had provided 7248 Eastlawn Avenue as his address, and in 2012, he had provided 717 Mitchell Avenue as his address.

{¶4}    Following her investigation, Priestle obtained what she believed to be a current address for Bush at 1867 Kinney Street and provided that address to the sheriff's office.  She followed up on the address several times to see if it had changed, but nothing had changed from the initial information that she had sent to the sheriff's office.

{¶5}    Hamilton County Sheriff's Deputy Ray Knight testified to the procedures that detectives in the Fugitive Warrant Section of the sheriff's

department follow when processing an arrest warrant for a felony nonsupport indictment. He said that they review various databases to ensure that the warrant is active and that the accused is not incarcerated in Ohio, Kentucky, or Indiana. He noted that a search of Bush's driving record revealed that his address was listed as 717 East Mitchell Avenue.

{¶6} Deputy Knight testified that, upon receiving the information from Priestle, he consulted the detectives' notes in his unit's in-house warrant system to see if there was any useful information with regard to Bush. He noted that detectives who work on misdemeanor contempt warrants had already tried and failed to locate Bush at various addresses, including the Mitchell Avenue address, but not the Kinney Street address provided by Priestle. He said that the detectives had been to the Mitchell Avenue address five different times and had left notices for Bush. At that address, the detectives had spoken to Bush's father and brother, both of whom had reported that Bush did not live there.

{¶7} Deputy Knight testified that he did not try again to find Bush at the Mitchell Avenue address because he did not want to harass Bush's father who had already told detectives that Bush did not live there. So he went to the Kinney Avenue address that had been provided by Priestle to try to find Bush. When no one answered the door, Deputy Knight left a notice for Bush to contact detectives, but Bush never did. Other than Priestle's periodic follow-ups, no further action was taken to locate Bush before his arrest on August 3, 2018.

{¶8} Although in his written motion to dismiss Bush asserted that his address had not changed "in the past 15 years," he did not specify what that address was, and he did not support that assertion with evidence at the hearing.[1] At the conclusion of the hearing, defense counsel argued that detectives had failed to

---

[1] We note that despite his unsupported claim of having the same address for 15 years, he himself provided authorities with two different addresses during that 15-year period.

attempt to serve Bush at the Mitchell Avenue address "[e]ven though there were family members who were there."

{¶9} At the conclusion of the hearing, the trial court noted that detectives had previously attempted to locate Bush at the Mitchell Avenue address, stating, "Because I assume that's the argument here is that he was actually residing at Mitchell Avenue on open warrants that were filed prior to this case being filed." The court noted that detectives had been to that location repeatedly and that notices for Bush's misdemeanor warrants had been mailed to that address. The court noted that Bush's father and brother, who lived at the Mitchell Avenue address, had confirmed that Bush did not live there. Therefore, the court found that "[t]here was really no reason for the detectives in this case to go back to that address just to redo work that had already been done."

{¶10} The trial court determined that the prosecutor's and sheriff's offices "did go to lengths to locate the defendant," and that Bush had suffered no prejudice as a result of the delay between indictment and arrest because no evidence had been destroyed and no witnesses had disappeared. The court denied Bush's motion to dismiss and, after his no-contest plea, found him guilty of nonsupport.

## II. Constitutional Right to a Speedy Trial

{¶11} In his only assignment of error, Bush argues that the trial court erred by denying his motion to dismiss. He contends that the 21½-month delay between his indictment and arrest violated his constitutional right to a speedy trial. Our review of the trial court's decision involves a mixed question of law and fact. *State v. Rice*, 2015-Ohio-5481, 57 N.E.3d 84, ¶ 15 (1st Dist.). Accordingly, we must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but we must independently review whether the court properly applied the law to the facts of the case. *Id.*

{¶12} A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 10 of the Ohio

Constitution. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 14. The right to a speedy trial is "triggered by arrest, indictment, or other official accusation." *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *see Betterman v. Montana*, ____ U.S. ____, 136 S.Ct. 1609, 1613, 194 L.Ed.2d 723 (2016), citing *United States v. Marion*, 404 U.S. 307, 320-321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

### A. Barker Factors

**{¶13}** To determine whether a defendant has been deprived of her or his constitutional right to a speedy trial, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997).

### 1. Length of Delay

**{¶14}** The length of delay operates as a "triggering mechanism." *Barker* at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Courts have generally found delays of about one year to be presumptively prejudicial. *Selvage* at 468; *Doggett* at 652, fn. 1. Less delay will be tolerated for "ordinary street crime" than "for a serious, complex conspiracy charge." *Barker* at 531. This court has held that a 14½-month delay in prosecuting nonsupport-of-dependents charges, which were "low-level felonies," was presumptively prejudicial for purposes of the first *Barker* factor. *State v. Pierce*, 1st Dist. Hamilton No. C-160699, 2017-Ohio-5791, ¶ 10. Therefore, the delay of 21½ months in this case is sufficient to justify inquiry into the remaining *Barker* factors.

**{¶15}** Although the first factor technically weighs in Bush's favor, its weight is negligible because the "interests which the Sixth Amendment was designed to protect—freedom from extended pretrial incarceration and from the disruption

caused by unresolved charges" were not present in this case. *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997) (54-month delay between indictment and trial did not result in any infringement on the defendant's liberty); *State v. Keaton*, 10th Dist. Franklin No. 16AP-716, 2017-Ohio-7036 (22-month delay between indictment and arrest weighed negligibly in the defendant's favor where the defendant did not know of the indictment).

### 2. *Reason for the Delay*

{¶16} The second *Barker* factor is "the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. Deliberate attempts to delay the trial must be weighed heavily against the state, while negligence or overcrowded dockets should be weighted less heavily. *Id.* Nothing in the record suggests—and Bush does not argue—that the delay was a deliberate attempt by the state to impede his defense.

{¶17} Here, the trial court reasonably could conclude that any further attempt to serve Bush at the Mitchell Avenue address would have been futile, given the numerous prior attempts and the insistence by family members that Bush did not live there. Even after an attempt to personally serve Bush at the Kinney Street address failed, Priestle had continued to periodically follow up to see if she could find a current address. Nevertheless, the ultimate responsibility for the delay rests with the state. *Id.* Therefore, this factor weighs slightly in Bush's favor.

### 3. *Assertion of the Speedy-Trial Right*

{¶18} "The third factor addresses the timeliness and frequency of the defendant's assertions of [the] speedy-trial right." *Rice*, 2015-Ohio-5481, 57 N.E.3d 84, at ¶ 27. If a defendant sits on her or his speedy-trial rights, this factor weighs against the defendant. *State v. Jackson*, 2016-Ohio-5196, 68 N.E.3d 1278, ¶ 14 (1st Dist.). In this case, Bush waited four months after his arrest to file a motion to dismiss on speedy-trial grounds. This factor weighs slightly in the state's favor. *See*

*Rice* at ¶ 27 (defendant's delay of four months to assert speedy-trial right weighed in state's favor).

### 4. *Prejudice Caused by the Delay*

{**¶19**} Courts should assess prejudice in light of the interest which the right to a speedy trial was designed to protect, including (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Neither of the first two interests is implicated in this case because Bush was not incarcerated in the period between his indictment and arrest, and he did not assert that he suffered anxiety or concern during that period. In fact, he could not have suffered anxiety or concern because he did not know of the existence of the warrant.

{**¶20**} With respect to the third interest, Bush asserts that he does not need to demonstrate that he suffered actual prejudice because prejudice is presumed where the delay exceeds one year. The presumptive prejudice to which he refers, however, "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686, 120 L.Ed.2d 520, fn. 1. That presumptive prejudice "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Id.* at 656. Presumptive prejudice "is part of the mix of relative facts, and its importance increases with the length of the delay." *Id.*

{**¶21**} *Doggett* recognized that "pretrial delay is often both inevitable and wholly justifiable" because the state may need time to locate witnesses or to track down a defendant that goes into hiding. *Id.* If the state pursues a defendant with reasonable diligence from indictment to arrest, the defendant's speedy-trial claim would fail no matter how long the delay, as long as the defendant could not show specific prejudice to her or his defense. *Id.* On the other hand, the defendant would

prevail on a speedy-trial claim if she or he could show that the state had acted in bad faith to gain an "impermissible advantage at trial." *Id.*

{¶22} In determining at what point prejudice is presumed so as to relieve the defendant of showing actual prejudice to her or his defense, courts focus on the culpability of the state in failing to bring the defendant to trial. *Jackson*, 2016-Ohio-5196, 68 N.E.3d 1278, at ¶ 18. On the spectrum "[b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Doggett* at 656-657. Where the state's conduct in bringing the defendant to trial is due to negligence, courts' "toleration of such negligence varies inversely with its protractedness * * * and its consequent threat to the fairness of the accused's trial." *Id.* at 657. Therefore, "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id.*

{¶23} In *State v. Triplett*, the Supreme Court of Ohio held that a 54-month delay between between the indictment and arrest of a criminal defendant was not presumptively prejudicial where the defendant precipitated the delay by failing to claim certified mail informing her of her indictment. *Triplett*, 78 Ohio St.3d at 568, 679 N.E.2d 190. Even in cases where the state was largely responsible for the delay, this court has declined to find delays of under 18 months presumptively prejudicial under the fourth *Barker* factor so as to relieve the defendant of the burden of proving actual prejudice. *State v. Rice*, 2015-Ohio-5481, 57 N.E.3d 84 (an 18-month delay); *State v. Rogers*, 1st Dist. Hamilton No. C-180120, 2019-Ohio-1251 (a 15-month delay).

{¶24} "In aggravated cases involving excessive pretrial delay, prejudice may be presumed despite the defendant's inability to identify particular testimony or evidence that has become unavailable due to the passage of time." *Rice*, 2015-Ohio-5481, 57 N.E.3d 84, at ¶ 28, citing *Doggett* at 655-656. In *Doggett*, the court determined that six years of an eight-and-a-half year delay between the defendant's

indictment and arrest was attributable to "the Government's egregious persistence in failing to prosecute Doggett." *Id.* The court noted that the "portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim." *Id.* at 657-658. Although Doggett was unable to demonstrate particularized prejudice resulting from the delay, the court determined that the delay was presumptively prejudicial. *Id.* at 658.

{¶25} In cases where the state has made little or no effort to notify a criminal defendant of a complaint or indictment, this court has held that the defendant is not required to show actual prejudice resulting from the delay between issuance of the complaints or warrants and arrest. *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060 (1st Dist.); *State v. Jackson*, 2016-Ohio-5196, 68 N.E.3d 1278 (1st Dist.). In *Sears,* this court presumed that a criminal defendant's defense was prejudiced by a delay of nine months where the state failed to make any attempt to notify the defendant of a misdemeanor assault complaint. *Sears* at ¶ 4 and 12. In *Jackson*, this court presumed prejudice from a four-year delay between the issuance of warrants and the defendant's arrest where, except for the one month following the issuance of the warrants, the state was not reasonably diligent in pursuing the charges against the defendant. *Jackson* at ¶ 13 and 20.

{¶26} Similarly, in *State v. Pierce*, 1st Dist. Hamilton No. C-160699, 2017-Ohio-5791, this court held that where the state offered no evidence to explain a 14½-month delay between an indictment and arrest on a felony nonsupport indictment, the defendant did not have to prove actual prejudice brought on by the delay. Because the state wholly failed to offer any evidence to explain the delay in arresting the defendant, we reversed the trial court's judgment overruling the defendant's motion to dismiss the indictment on speedy-trial grounds. *Id.* at ¶ 4 and 17-19.

{¶27} Here, the 21½-month delay between Bush's indictment and arrest, while a little longer than the delays we found acceptable in *Rice* and *Rogers*, is significantly shorter than the eight-and-a-half-year delay that the United States

Supreme Court found to be presumptively prejudicial in *Doggett* or the four-year delay that we found to be presumptively prejudicial in *Jackson.* Although the delay here is longer than the nine-month delay in *Sears* or the 14½-month delay in *Pierce*, the state offered evidence that it had made periodic and regular efforts to locate Bush during the period between his indictment and arrest. Accordingly, we decline to find the delay here to be so egregious as to presume prejudice.

{¶28} Bush asserts for the first time on appeal that the delay of 21½ months impaired his "ability to obtain his personal financial information" to raise an affirmative defense under R.C. 2921.21(D) related to his ability to pay. He failed to raise this argument in the trial court, however, so he has waived his right to raise it for the first time on appeal. *See State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993) (a party who fails to raise an argument in the court below waives his or her right to raise it on appeal).

### III. Conclusion

{¶29} The first and second *Barker* factors—the length of the delay and the reason for the delay—weigh slightly in Bush's favor. However, the third and fourth factors—the assertion of the speedy-trial right and the lack of prejudice—weigh more decisively against him. Although the delay caused by the state's negligence in locating Bush was sufficient to trigger an analysis of the *Barker* factors, it was insufficient to relieve him of the duty to demonstrate that he was actually prejudiced by the delay. Therefore, after weighing the *Barker* factors, we hold that Bush was not deprived of his constitutional right to a speedy trial. Consequently, the trial court did not err in denying his motion to dismiss. We overrule the sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

CROUSE, J., concurs.
ZAYAS, P.J., concurs in judgment only.

Please note:

The court has recorded its own entry this date.