[Cite as *State v. Muhammadel*, 2021-Ohio-567.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190683 |
| | | TRIAL NO. 17CRB-28850 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ALAMIN MUHAMMADEL,[1] | : | |
| | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  March 3, 2021

*Andrew Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Meagan D. Woodall*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

---

[1] The defendant-appellant's last name is spelled "Muhammadel" on the notice of appeal but "Muhammedel" on the complaint and most of the documents filed in the trial court.

**WINKLER, Judge.**

{¶1}    Alamin Muhammadel appeals the judgment of the Hamilton County Municipal Court convicting him of assault, in violation of R.C. 2903.13. He maintains that the state violated his constitutional speedy-trial right where there was a two-year delay in apprehending him after the filing of the complaint. Upon weighing the relevant factors, we hold Muhammadel's constitutional speedy-trial right was not violated in this case. Accordingly, we affirm.

## Background Facts and Procedure

{¶2}    This appeal involves a prosecution for a misdemeanor assault that commenced for speedy-trial purposes on October 17, 2017. On that day, Cincinnati Police Officer Alphonso Staples responded to the scene in the central business district of Cincinnati to assist Pamela Martin. She contended that Muhammadel had punched and kicked her, causing injury to her hand, before disappearing. In addition to searching for Muhammadel that day, Officer Staples filed a complaint and obtained an arrest warrant. The arrest warrant contains detailed identification information such as Muhammadel's date of birth and control number, but lists his address as "no home," consistent with information from the police data base and Martin.

{¶3}    After October 17, 2017, Officer Staples did not pursue Muhammadel. The Cincinnati Police Department had protocols in place for investigators to continue the pursuit of homeless defendants, but he could not confirm that those protocols were followed. One protocol involved sending notice about the warrant to the local homeless shelter, into which officers were restricted from entering.

{¶4}    About ten months after Muhammadel was charged with assault, a second individual accused Muhammadel of aggravated menacing. Cincinnati Police

2

Officer Zachary Kress responded to that scene and obtained a warrant for Muhammadel's arrest. He was unable to find an address for Muhammadel in the police data base or from the victim, who relayed only that Muhammadel frequented the Price Hill neighborhood of Cincinnati. A few months after obtaining the aggravated-menacing warrant, Officer Kress specifically looked for Muhammadel on three separate shifts. He also ran an updated search of Muhammadel's name and control number through the police data base, but found no additional location information. Unable to find Muhammadel despite these efforts, Officer Kress submitted the warrant to the subpoena officers. He could confirm no further efforts to apprehend Muhammadel, other than he and his fellow officers "just ke[eping] [their] eyes outs to locate him."

{¶5} Apparently, those efforts were eventually successful. On October 16, 2019, almost two years after the assault complaint was filed, Muhammadel was arrested for the offenses.

{¶6} Soon after his arrest, Muhammadel moved to dismiss both complaints, claiming the delay between the filing of formal charges and his arrest was due to a lack of police diligence that resulted in a violation of the speedy-trial provisions of the United States and Ohio Constitutions. In support, he relied on the four-factor "*Barker*" test applied to evaluate Sixth-Amendment-based speedy-trial claims and claims under Ohio's Speedy Trial Clause. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Long*, Slip Opinion No. 2020-Ohio-5363, ¶ 13-14.

{¶7} Evidence offered at the joint hearing on the motions to dismiss was limited to testimony from the two Cincinnati police officers who signed the warrants and Martin, the victim in the assault case. The officers explained their efforts to

3

apprehend Muhammadel and the inability of the police to enter the Drop Inn Center, the local homeless shelter, to look for individuals. Martin indicated that she never knew Muhammadel to have a stable residence over the many years she knew him.

{¶8} Muhammadel did not testify. Further, he did not present evidence of a location where he could have been found for service of the warrants during the two-year period at issue. Defense counsel argued, however, that the police officers had improperly used Muhammadel's homelessness as an excuse to forgo diligent efforts to apprehend him. The state argued the *Barker* factors weighed against a speedy-trial-right violation, characterizing the delay as reasonable considering Muhammadel's lack of a stable residence.

{¶9} When the trial court asked defense counsel about prejudice caused by the delay, defense counsel responded that the delay had led to the loss of a police body-worn camera recording and the ability to interview a witness. The trial court denied the motion, unpersuaded by the claim of actual evidentiary prejudice and emphasizing that Muhammadel was "not readily able to [be] f[ou]nd because he d[id]n't have an address." Subsequently, Muhammadel pleaded no contest to the assault charge, and the court dismissed the aggravated-menacing charge for want of prosecution.

### Constitutional Right to a Speedy Trial

{¶10} The issue raised in Muhammadel's sole assignment of error is whether the two-year delay between the filing of the assault complaint and his arrest violated his constitutional right to a speedy trial. To determine whether a particular delay is constitutionally reasonable, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, 33

L.Ed.2d 101, quoted in *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶11} The *Barker* factors are related and must be considered together, along with such other circumstances as may be relevant to protecting the purposes of the constitutional speedy-trial guarantee. *See Barker* at 533. That guarantee is designed " '(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " *Smith v. Hooey*, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), quoting *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

{¶12} Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo. *See Long*, Slip Opinion No. 2020-Ohio-5363, at ¶ 15.

### Length of the Delay

{¶13} The length-of-the-delay inquiry serves as a threshold inquiry that a defendant must satisfy before triggering further analysis under the *Barker* factors. Generally, as a delay between formal accusation and arrest approaches one year, the delay triggers further analysis. *See Doggett*, 505 U.S. at 662, 112 S.Ct. 2686, 120 L.Ed.2d 520, fn. 1.; *Long* at ¶ 19. In this appellate district, a delay of nine months or more in a misdemeanor-assault case gives prima facie merit to a claim of denial of the constitution-based right to a speedy trial and requires the court to analyze the three remaining *Barker* factors to determine if reversal is warranted. *State v. Sears*, 166 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, ¶ 12 (1st Dist.).

Consistent with this precedent, the state has never disputed that the two-year delay in this case triggered analysis under the remaining three *Barker* factors.

{¶14} Although the length of the delay triggers further analysis, the first factor weighs only negligibly for Muhammadel because he was not incarcerated or otherwise restrained of his liberty during the delay and did not know of the pending complaint. *See State v. Bush*, 1st Dist. Hamilton No. C-190094, 2020-Ohio-1229, ¶ 15, citing *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997), and *State v. Keaton*, 10th Dist. Franklin No. 16AP-716, 2017-Ohio-7036.

### Reason for the Delay

{¶15} The second Barker factor focuses on the state's explanation for the delay. *State v. Jackson*, 2016-Ohio-5196, 68 N.E3d 1278, ¶ 11 (1st Dist.). The state has the burden of ensuring a speedy trial, but a pretrial delay is "often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656, 112 S.Ct. 2686, 120 L.Ed.2d 520, quoted in *Sears* at ¶ 13. This inquiry, thus, examines the source of the delay, and whether delay tied to the government was "[]necessary" and thus, "[]justifiable," or whether it "might reasonably have been avoided." *Dickey v. Florida*, 398 U.S. 30, 51-52, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); *Sears* at ¶ 13. *See Doggett* at 652-653 ("For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes.").

{¶16} Different reasons for delay are afforded "different weights." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. A deliberate delay by the government weighs heavily against the state. *Id.* Delay resulting from a neutral reason such as

6

negligent conduct of the government weighs less heavily. *Id.* Delay that is justifiable and reasonable in time generally does not weigh against the state at all. *Id.*

{¶17} Intertwined with this analysis is consideration of whether the defendant shares any responsibility for the delay. *See Triplett*, 78 Ohio St.3d at 570, 679 N.E.2d 290. (A defendant's "slipperiness" contributing to the delay weighs "heavily against" the defendant, even when the police are "underzealous" in bringing a defendant to justice.).

{¶18} Muhammadel argues the evidence at the hearing showed the source of the delay was Officer Staples's "negligence" in failing to use more diligent efforts to apprehend him. Undoubtedly, the police have a duty to use serious efforts to apprehend the accused, even those without a stable address. *See Doggett*, 505 U.S. at 653, 112 S.Ct. 2686, 120 L.Ed.2d 520; *United States v. Velazquez*, 749 F.3d 161, 179-180 (3d Cir.2014). The difficulty with Muhammadel's negligence argument is the absence of evidence to support a conclusion that more diligent efforts likely would have led to an earlier arrest.

{¶19} The state presented evidence that Muhammadel lacked a stable address where he could be found and this lack of address, along with the restrictions of the Drop Inn Center, impeded his apprehension. Muhammadel did not challenge this evidence and the trial court accepted it. Lacking evidence of where Muhammadel could have been found, one cannot conclude with much certainty that Muhammadel would have been arrested sooner with more police diligence.

{¶20} Muhammadel now challenges the state's claim that he lacked an address for apprehension, but his late efforts are unavailing. He cites defense counsel's representation, at the bond reduction hearing, that Muhammadel had become employed and obtained stable housing at some point before his arrest. But

7

defense counsel's representation is too vague to make any difference to our analysis in this case. The trial court was unpersuaded by defense counsel's representation and rejected the bond reduction request, a position advocated by the prosecuting witness Martin, who appeared at the hearing and told the court that Muhammadel "has a very good way of eluding people," based on her long history of dealing with him.

{¶21} Muhammadel also invites this court to perform our own search on websites such as PeopleFinders.com or the Hamilton County Clerk of Courts to discover ostensible addresses where the police could have looked for him during the delay. While information from these websites, if timely presented in the trial court, may have aided our decision, this court cannot add to the trial court record when deciding this appeal. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶22} Finally, Muhammadel argues that the state had the burden to show that his "nomadic lifestyle" would have made the government's efforts "unfruitful" even if the police had been "diligent." But if we accept Muhammadel's argument, we would be placing an unwarranted burden on the state to prove what it undisputedly did not know and Muhammadel did—his whereabouts.

{¶23} Ultimately, we conclude that the trial court's findings that Muhammadel lacked an address and was not readily available to be found are supported by competent, credible evidence and, therefore, we accept them when considering the reason for the delay.

{¶24} Although we accept the trial court's factual findings, we cannot condone the lack of police effort here by characterizing the entire delay as justified. Conversely, we cannot characterize the state's conduct as a deliberate attempt to

delay Muhammadel's trial to gain a tactical advantage. An officer looked for Muhammadel on the date of the assault, elicited some location information from the victim, obtained and filed an arrest warrant that contains Muhammadel's identification information such as his control number in addition to a physical description, and assumed others would take over the search. This record does not implicate bad faith and Muhammadel has never suggested bad faith.

{¶25} Missing from this case, too, is an argument by the state that Muhammadel was attempting to avoid apprehension. Moreover, the state recognizes that Muhammadel cannot be blamed for the delay due to his lack of a stable address.

{¶26} Without some evidence that more diligent efforts would have resulted in an earlier trial, we conclude the state's reason for the lengthy delay is a "neutral reason" that weighs against the state, but not heavily. *See Barker*, 407 U.S. 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. ("A more neutral reason" weighs less heavily for a violation, but must be considered as part of the analysis "since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.").

### Assertion of Speedy-Trial Rights

{¶27} The third *Baker* factor examines the defendant's assertion of the speedy-trial right. Here, there was no evidence that Muhammadel knew of the complaint before his arrest. Further, he promptly moved to dismiss the case after his arrest. Thus, Muhammadel argues this factor should weigh in his favor. We agree with Muhammadel, and note the state's agreement, too.

### Prejudice Caused by the Delay

{¶28} The final *Barker* factor considers whether Muhammadel suffered prejudice from the delay. Muhammadel claimed actual prejudice to his defense at

the hearing on the motion to dismiss. The trial court found his assertions inadequate to warrant dismissal.

{¶29} On appeal, Muhammadel maintains that he demonstrated actual impairment to his defense and, for the first time, he contends prejudice to his defense should be presumed.

{¶30} Prejudice to the defense is the "most serious" interest protected by the speedy-trial right, yet it is often difficult to prove. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Moreover, "[e]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *Doggett*, 505 U.S. at 656, 112 S.Ct. 2686, 120 L.Ed.2d 520. Thus, in some cases evidentiary prejudice will be presumed.

{¶31} "In determining at what point prejudice is presumed so as to relieve the defendant of showing actual prejudice to her or his defense, courts focus on the culpability of the state in failing to bring the defendant to trial." *Bush*, 1st Dist. Hamilton No. C-190094, 2020-Ohio-1229, at ¶ 22.

{¶32} In *Doggett*, the United States Supreme Court held that an eight-and-a-half-year delay between an indictment and arrest on federal drug charges was presumptively prejudicial due to "the Government's egregious persistence in failing to prosecute Doggett." *Doggett* at 656. After explaining how law enforcement could have located Doggett "within minutes" exerting minimal effort, the Court concluded that Doggett would have gone to trial six years earlier if not for "the Government's inexcusable oversights." *Id.* at 657.

{¶33} Consistent with *Doggett*, this court has presumed prejudice where a lack of police persistence caused an unnecessary and long delay. In *Jackson*, we presumed prejudice in a case involving a four-year delay, noting that the state failed

to explain how, if its efforts were diligent, it was unaware the defendant spent 18 months of a four-year delay in a state correctional facility. *Jackson*, 2016-Ohio-5196, 68 N.E.3d 1278, at ¶ 13.

{¶34} In *State v. Pierce*, we presumed prejudice in a case involving a delay of about 15 months, which is less than the two-year delay in this case. *State v. Pierce*, 1st Dist. Hamilton No. C-160699, 2017-Ohio-5791, ¶ 2, 17. But, when examining the state's culpability for the delay, we were unable to "definitively" rule out that the state had "acted intentionally to thwart service of the indictment." *Id.* at ¶ 12.

{¶35} Similarly, in *Sears*, this court presumed that a criminal defendant was prejudiced by a delay of only nine months where the state failed to make any effort to notify the defendant of the complaint. *Sears*, 116 Ohio App.3d 166, 2005-Ohio-5963, 849 N.E.2d 1060, at ¶ 16. We emphasized, too, that the state never suggested it had a problem locating the defendant, who had resided at the same address during the challenged delay, and the police had defendant's social security number, date of birth, and correct address with the exception of the last digit of the zip code. *Id.* at ¶ 3-4, 14.

{¶36} Conversely, in *Bush*, this court did not presume prejudice because the state offered evidence that it had made "periodic and regular efforts" to locate the defendant at his known addresses during a 21-and-one-half month delay between indictment and arrest. *Bush*, 1st Dist. Hamilton No. C-190094, 2020-Ohio-1229, at ¶ 27. After considering the facts in context and in comparison to other cases, we concluded that the delay was not "so egregious as to presume prejudice." *Id.*

11

{¶37} The state argues this case does not warrant a presumption of prejudice considering the state's efforts to locate Muhammadel, the length of the delay, and the absence of location evidence. We agree.

{¶38} As previously noted, this case involves a lack of police persistence that we do not condone. The record, however, does not contain facts allowing us to conclude with any confidence that the police would have located Muhammadel sooner with more diligence. Considering the culpability of the state in light of the long but not extreme delay, we decline to find the circumstances of the delay here so egregious as to cross over the point where a presumption of prejudice is warranted. *See Bush* at ¶ 27.

{¶39} Next we review whether Muhammadel made any affirmative showing of prejudice. Muhammadel did not claim the delay weakened his ability to raise specific defenses or elicit specific testimony. He claimed only that he lost the opportunity to preserve any recording from a police-worn body camera, to "interview" a "witness" listed on the "police officer's report" and, that, resultantly, "all of the physical evidence in this case has been lost."

{¶40} The trial court found these contentions insufficient to warrant relief, overruling the motion to dismiss without affording the state an opportunity to challenge them. The state now argues that defense counsel's assertions of prejudice were speculative and unsupported by the record. And the state rebuts the claim of prejudice, noting the state's filed discovery response shows Muhammadel was provided the police incident report and that Martin's appearance at the hearing on the motion to dismiss shows she was available for trial.

{¶41} We conclude that Muhammadel failed to show particularized prejudice. For instance, Officer Staples, who arrived at the scene of the assault after

Muhammadel's departure, was not asked at the hearing on the speedy-trial motion if his body-worn camera was activated when he assisted Martin at the scene. Thus, the record does not suggest that the recording, typically retained for a limited time, captured anything relevant to Muhammadel's defense, even for impeachment purposes. Further, while Muhammadel showed that he was not able to interview a state's witness earlier, he did not show the witness was deceased or otherwise unavailable for an interview or a trial.

{**¶42**}     Absent prejudice, this factor weighs against Muhammadel.

### Conclusion

{**¶43**}     " '[T]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' " *Barker*, 407 U.S. at 522, 92 S.Ct. 2182, 33 L.Ed.2d 101, quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905). After applying the *Barker* balancing test to the circumstances in this case, we conclude that Muhammadel's constitutional speedy-trial right was not violated. Muhammadel timely moved to dismiss the assault complaint, but considering the tenuous link between the state's efforts in pursuing him and the two-year post-accusation delay, and the absence of any particularized prejudice, we hold the trial court did not err in denying his motion to dismiss. Consequently, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:
     The court has recorded its own entry this date.